```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION AT LEXINGTON
```

**CIVIL ACTION NO. 2011-398 – WOB**

**DAVID HACKER**                                                    **PLAINTIFF**

**VS.**

**LINCOLN COUNTY DETENTION
CENTER, ET AL.**                                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

WILLIAM O. BERTELSMAN, District Judge.

This is a civil rights action brought by David Hacker, a former Kentucky prisoner, under 42 U.S.C. § 1983. Hacker alleges violations of the Eighth and Fourteenth Amendments and parallel Kentucky constitutional provisions arising from an assault by a fellow inmate at the Lincoln County Regional Jail ("LCRJ"), which resulted in the loss of one of Hacker's eyes. Hacker also alleges state law tort claims.

This case is before the Court on a motion for summary judgment by Defendants Lincoln County Detention Center, Jailer William Gooch, Deputy Dennis Ray, Deputy Rodney Price, and Deputy Stephanie McAnich (individually and in their official capacities).[1] (Doc. 62). The Court heard oral argument on September 9, 2014 and took this motion

---

[1] The Complaint (Doc. 1) also names as defendants four inmates who shared a cell with Hacker (William Plummer, Jason Napier, David Walls, and Brett Whitaker) and other unknown prisoners. These individuals were never served and thus are not discussed.

under advisement. After further study, the Court now issues the following Memorandum Opinion and Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 15, 2010, David Hacker was admitted to the LCRJ after being found in contempt of court for violating a no contact order and terms of his probation. Doc. 62-1, Docket Sheet. Previously, Hacker had been convicted of several other offenses and had been incarcerated at LCRJ multiple times. Doc. 71, Hacker Depo., pp. 106, 109-19. The catalyst for Hacker's criminal history was a 1998 motor vehicle accident, which caused Hacker to suffer a traumatic head injury that significantly changed his personality. *Id*. at 44; Doc. 65-1, Medical Questionnaire, pp. 1-2.

Defendant McAnich was the booking officer on duty when Hacker was admitted to LCRJ on November 15, 2010. Doc. 70, McAnich Depo., p. 95. At the time of his booking, Hacker completed a Medical Questionnaire, which stated that he had a serious medical condition of a "post closed head injury," took medication for emotional problems, and had been separated from other inmates during previous incarcerations at LCRJ to keep from being beaten up. Doc. 65-1, Medical Questionnaire, pp. 1-2.

On that same form, Hacker answered "no" to the question, "Are you aware of any reason you should be separated from other inmates while you are here?" Doc. 71, Hacker Depo., pp. 197-99; Doc. 65-1, Medical Questionnaire, pp. 1-2. However, Hacker claims he told McAnich at the time of booking that he did not want to be placed in a cell with any felons because he would be in danger due to his disabilities. Doc.

71, Hacker Depo., p. 199. Hacker claims McAnich responded by laughing and saying no one wants to be housed with a felon and that everyone would like to be in isolation. *Id.*

McAnich booked Hacker in cell 119, a protective custody cell, designated as such because it was the "quietest," "calmest," and "safest" cell. Doc. 70, McAnich Depo., p. 42; Doc. 68, Gooch Depo., pp. 201-02. According to McAnich, cell 119 is for individuals with mental health, physical, and social issues affecting how they interact with other inmates. Doc. 70, McAnich Depo., p. 41. While McAnich does not recall what she reviewed during Hacker's booking, she testified that typically she would review the inmate's institutional history, including housing history and medical history. *Id.* at 41-46.

Hacker claims that problems began when defendants Jason Napier, David Walls, Brett Whitaker, and Billy Plummer were placed in cell 119 in early December 2010. Doc. 71, Hacker Depo., p. 163.

Hacker needed to use the restroom frequently due to continence issues. *Id.* at 155. Hacker alleges that beginning around December 6, 2010, for about three days, Plummer would intentionally occupy the bathroom when Hacker needed to use it. *Id.* at 155-57, 162-63, 167-68. Plummer's blocking of Hacker's access to the restroom caused Hacker to wet his pants and instead urinate in other receptacles, including a garbage can and, on or around December 7 or 8, an empty peanut butter jar. *Id.* at 169-70. During the peanut butter jar incident, Napier became upset because he believed Hacker had spilled urine from the jar on the floor beside Napier's bed. *Id.* at 157-58, 172.

As a result, on or around December 9 or 10, 2010, Napier told Deputy Ray about the peanut butter jar incident and asked that Hacker be removed from cell 119. *Id.* at 157-58, 172-73; Doc. 69, Ray Depo., pp. 129-33.

Ray spoke to Hacker about the incident, and Hacker told Ray that he had urinated in the peanut butter jar because Plummer and other cellmates blocked his access to the restroom. Doc. 69, Ray Depo., pp. 133-34. Ray told Hacker that he would move him to a new cell if he felt his safety was in jeopardy, but Hacker did not request a change of cells and told Ray that he was "okay." *Id.*; Doc. 71, Hacker Depo., p. 189. Then, Ray spoke to the men housed in cell 119 and told them he was aware that some men were preventing people from using the bathroom and asked that they not have any more problems with the issue. Doc. 69, Ray Depo., p. 134.

Hacker alleges that over the next few days he overheard Napier, Walls, and Whitaker trying to persuade Plummer that he could commit a crime in prison without being charged with a second crime -- what the men called a "freebie." Doc. 71, Hacker Depo., pp. 176, 179. Hacker claims that on the afternoon of December 10, 2010, Plummer approached him and commented about the "freebie" concept. *Id.* at 178-79. Although Plummer did not threaten Hacker directly, Hacker testified that he perceived the statements as threatening. *Id.* at 180.

Hacker claims that at 11:00 p.m. on December 10, 2010, he asked Deputy Price to move him from cell 119. *Id.* at 150, 176. Hacker states that Price refused to move him and said: "We offered to move

you out once.  You will just have to get what they want to give to you."  *Id*. at 150-51.  Price, however, testified that he never had a conversation with Hacker in which Hacker asked to be moved out of cell 119.  Doc. 67, Price Depo., p. 70.  Price also testified that he was not working the evening of December 10, 2010 -- a fact confirmed by LCRJ time records.  *Id*. at 86-87; *see also* Doc. 62-3, Timesheet.

On December 11, 2010, at some point between 6:30 p.m. and 7:30 p.m., Plummer assaulted Hacker in his cell.  Doc. 71, Hacker Depo., pp. 205-07.  Holding a domino between his fingers, Plummer punched Hacker in the eye.  *Id.* at 205, 209.  The impact knocked Hacker's prescription eye glasses to the ground and caused Hacker to lose vision in his injured eye, as it filled with blood.  *Id*. at 205-06, 209.  Plummer hit Hacker two more times.  *Id*. at 206, 209.  Hacker yelled for help during the attack.  *Id*. at 206.  Hacker estimates that Plummer hit him three times in five minutes, with one to three minutes elapsing between each hit.  *Id*. at 209.  Hacker believes that it took seven minutes after the assault for the jail staff to enter the cell.  *Id*.

Hacker testified that in between the additional punches from Plummer, he looked up at the cell window and saw three deputies watching the assault and failing to respond to his calls for help.  *Id*. at 206, 209.  Hacker is not certain which staff members he saw, but claims he saw two male deputies he believed to be Glover and Lay, and one female deputy, who he thought was McAnich or Mobley.  *Id.* at 206-07.

Deputy McAnich was working as the control room operator during the time the assault occurred. Doc. 70, McAnich Depo., p. 81. McAnich was on her way back to the control room after performing checks on the female cells when she heard a commotion in cell 119. *Id*. at 81. Upon hearing the disturbance, McAnich called on her radio to report the fight in cell 119. *Id*. Because she was working the control room, McAnich did not have keys to the cell 119 door on her person. *Id*. at 81-82. McAnich then immediately returned to the control room, and passed Masterson, Godbey and Shackelford, who were running into cell 119 to respond to the incident. *Id*. at 81-82; 102.

Deputy Ray testified that he responded "within seconds" to the commotion in cell 119. Doc. 69, Ray Depo., pp. 159-60. After entering the cell, Deputies Shackelford and Godbey took Hacker to the booking area to address his medical needs; Plummer was taken to a different cell. *Id*. at 164, 172-73. Although Hacker recalls being taken to Fort Logan hospital by ambulance, LCRJ records indicate that Deputy Shackelford transported Hacker there by police cruiser to save time due to the severity of the incident. Doc. 70, McAnich Depo., pp. 52-54.

Hacker arrived at Fort Logan Hospital by 7:35 p.m. Doc. 71, Hacker Depo., p. 225. At approximately 8:30 p.m., EMS technicians transported Hacker to the University of Kentucky Medical Center for treatment, Doc. 62-5, EMS Run Report, arriving at approximately 9:30 p.m. Doc. 62-6, UK Admission Note. Hacker returned to the LCRJ on

December 13, 2010, after being discharged from the hospital. Doc. 71, Hacker Depo., p. 229.

Hacker was released from LCRJ on February 11, 2011. *Id*. at 230, 232. On December 8, 2011, Hacker filed this action against the Lincoln County Defendants and inmates Plummer, Napier, Whittaker, Walls and unknown inmates. Doc. 1, Complaint. In addition to his federal claims, Hacker brought state law claims of failure to classify under Ky. Admin. Regs. 3:110, assault, battery, civil conspiracy, respondeat superior, negligent supervision, negligence, and intentional infliction of emotional distress. *Id.* On April 30, 2014, Defendants Lincoln County, McAnich, Ray, Price, and Gooch moved for summary judgment. Doc. 62.

## II. ANALYSIS

**A. Summary Judgment**

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court "must consider 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rouster v. Cnty. of Sagniaw*, 749 F.3d 437, 446 (6th Cir. 2014)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). In determining whether there is a genuine dispute as to a material fact, "we interpret the facts and draw all reasonable inferences therefrom in

favor of the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B. Federal Claims**

"Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.

A prison official violates the Eighth Amendment when two requirements are met: (1) the alleged deprivation is objectively sufficiently serious, and (2) the prison official has a sufficiently culpable state of mind, amounting to deliberate indifference. *Id*. The Supreme Court has held that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837. A prison official may demonstrate that he was not deliberately indifferent to a risk to an inmate's safety by showing he did not know of the underlying facts indicating substantial danger, and was therefore unaware of the danger, or that he knew the underlying facts, but believed that the risk to which the facts gave rise was insubstantial or nonexistent. *Id*. at 844. "'Because . . .

prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment,' the question of what [the officials] knew is paramount." *Cobbs v. Pramstaller,* 475 F. App'x 575, 581 (6th Cir. 2012) (quoting *Farmer*, 511 U.S. at 843). The liability of each individual defendant must be analyzed separately. *Phillips v. Roane Cnty., Tenn.,* 534 F.3d 531, 542 (6th Cir. 2008).[2]

It is undisputed that Billy Plummer's December 11, 2010 assault on Hacker is sufficient to create an issue of fact as to the objective element of Hacker's Eighth Amendment claim. However, this claim fails because Hacker is unable to demonstrate that any of the Defendants acted with deliberate indifference, as required by the second prong of the test.

Initially, however, Plaintiff's argument that all of the Defendants should have realized Plummer posed a risk of harm to Hacker due to Plummer's suicidal history and mental health issues fails because there is no evidence any of the defendants were aware of such a risk prior to the assault. *See Taylor v. Little,* 58 F. App'x 66, 68 (6th Cir. 2003) (rejecting the argument that an inmate's propensity for violence towards one prisoner was sufficient to put prison officials on notice that the inmate might attack another prisoner, when the two have no apparent connection). The evidence demonstrates

---

[2] The Court sympathizes with Plaintiff's argument that Defendants' individual knowledge, when taken *collectively*, may have revealed that Hacker was at risk. But to establish § 1983 liability, the law requires proof that "each individual defendant had a sufficiently culpable state of mind." *Phillips*, 534 F.3d at 542. It is not enough for each defendant to hold a different piece of the puzzle.

- 9 -

that Plummer's propensity for violence prior to the assault was against himself, not others. Doc. 70, McAnich Depo., pp. 206-07. Thus, Plummer's prison record is insufficient to establish that he posed a specific risk to Hacker. *See Davis v. Brian*, No. 98-1810, 1999 WL 503522, at *5 (6th Cir. July 9, 1999). Consequently, Hacker cannot show deliberate indifference merely by arguing that the individuals with whom he shared a cell had violent episodes in their pasts.

**1. Defendant McAnich**

There is no evidence that Defendant McAnich was deliberately indifferent to a significant risk of harm to Hacker or his medical needs. Instead, the evidence demonstrates McAnich properly classified Hacker on November 15, 2010 by placing him in the protective custody cell. Doc. 70, McAnich Depo., pp. 41-43, 131. The LCRJ's inmate classification policy requires that the detention officer review the admission records and any existing facility records concerning the inmate for background information, including history of violent or disruptive behavior, evidence of homosexuality or vulnerability to attack, and evidence of mental or physical handicap. Doc. 65-2, Policy, p. 2. The evidence reflects that McAnich complied with this policy in assigning Hacker to a protective custody cell in light of his medical conditions. Doc. 70, McAnich Depo., p. 131. Further, McAnich could not have been aware Plummer posed a significant risk of harm when she placed Hacker in cell 119 on November 15, as Plummer was not moved to cell 119 until around December 6, 2010. Doc. 71, Hacker

Depo., p. 163. Likewise, there is no evidence that McAnich ever became aware of any risk of harm to Hacker between his admission and the December 11, 2010 assault.

Even if McAnich had not followed the classification policy, at most this failure would amount to negligence, which does not rise to deliberate indifference. *See Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 138 (6th Cir. 2014) (noting the dearth of authority holding that violation of an internal policy amounts to a constitutional violation); *Johnson v. Bowlen*, No. 99-6066, 2000 WL 1140739, at *2 (6th Cir. Aug. 8, 2000) (finding mere negligence insufficient to establish an Eighth Amendment claim).

There is also no evidence that McAnich was deliberately indifferent in responding to the assault on December 11, 2010. McAnich testified that she responded as soon as she heard commotion coming from cell 119, immediately requesting help because she did not have keys to enter the cell. Doc. 70, McAnich Depo., pp. 81-82. Although Hacker testified that he saw McAnich or another female guard watching him from the window rather than intervening, Doc. 71, Hacker Depo., pp. 206-09, this testimony is irrelevant, because it is undisputed that McAnich could not personally intervene because she lacked the required keys. Doc. 70, McAnich Depo., pp. 81-82; 101-102.

Thus, the Court concludes that no reasonable jury could find that Deputy McAnich was deliberately indifferent. Summary judgment as to Defendant McAnich is thus appropriate.

**2. Defendant Ray**

Hacker's allegation that Deputy Ray was aware prior to the assault of conflict in cell 119 over use of the restroom does not demonstrate deliberate indifference because there is no evidence that Ray knew before the assault that Plummer presented a threat of serious harm to Hacker. A jail employee's knowledge of a conflict between inmates is not equivalent to knowledge that one inmate poses a significant risk of harm to another. *See Varmado-El v. Martin,* 52 F. App'x 764, 766 (6th Cir. 2002) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996))); *Doe v. Bowles*, 254 F.3d 617, 621 (6th Cir. 2001) (finding that a guard's knowledge that one prisoner had "harassed" another did not constitute awareness of a substantial risk of harm).

While the evidence establishes that Ray learned of a conflict between Hacker and Napier related to Hacker's urinating in a peanut butter container, there is no evidence Ray had knowledge that Plummer posed a significant risk of harm to Hacker. And although Ray learned through his conversation with Hacker following the jar incident that Plummer had been blocking Hacker from using the restroom, Hacker denied being worried about the restroom situation, instead telling Ray that he was "okay." Doc. 69, Ray Depo., pp. 130-31, 134. There is no evidence Hacker told Ray he was concerned that either Plummer or Napier would attempt to assault him or that he felt at risk for

significant harm by Plummer. In fact, Hacker's deposition testimony makes clear that it was not until December 10, 2010, that Hacker first became concerned that Plummer planned to assault him. Doc. 71, Hacker Depo., p. 180. Thus, Ray's knowledge of minor inmate conflicts does not establish that he was aware prior to the assault that Plummer posed a risk to Hacker.

Hacker's allegation that Ray failed to respond reasonably to the assault also is not supported by the evidence. Ray testified that he responded "within seconds" to the noise he heard in cell 119, and believes he was the first one at the door. Doc. 69, Ray Depo., p. 159. He was followed shortly thereafter by Shackelford, Glover, and Godbey. *Id.* at 160. Jail staff proceeded to address the situation, resulting in Hacker's arrival at Fort Logan hospital within an hour of the assault. Doc. 71, Hacker Depo., p. 225; Doc. 70, McAnich Depo. pp. 57-58; 238-39. Thus, the Court concludes as a matter of law that Ray was not deliberately indifferent either to the risk that Plummer would assault Hacker or to Hacker's medical needs after the assault.

### 3. Defendant Price

Hacker also fails to raise a material dispute of fact regarding Deputy Price's knowledge of Plummer's perceived threat toward Hacker the day before the assault. Hacker alleges that he became fearful that Plummer would hurt him after Plummer insinuated on the afternoon of December 10, 2010, that he could commit an assault in prison without facing criminal liability. Doc. 71, Hacker Depo., pp. 179-80. Hacker claims that he told Deputy Price later that evening about the

exchange with Plummer and that he felt he was in "grave danger" and should be moved to a safer environment. *Id*. at 150, 176. Hacker claims Price callously rejected the request and suggested that Hacker would just have to get what was coming to him. *Id*. at 150.

But Hacker's version of these events is contradicted by Price's timesheet, which reveals that Price did not work the evening of December 10, 2010, and thus could not have had this conversation with Hacker at that time.[3] Doc. 62-3, Timesheet. Cases in our Circuit are clear that a party cannot create a triable issue of fact simply by telling a story different than the one told by unambiguous evidence in the record. *See, e.g.*, *Shreve*, 743 F.3d at 132 ("'[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment'" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))). Because both Price's testimony and his timesheet show that he was not working at the time of Hacker's alleged report, summary judgment for Price is appropriate.

### 4. Defendant Gooch - Supervisor Liability

To hold a supervisor liable for a subordinate's conduct under § 1983, Hacker must prove "'that the [supervising officer] did more than play a passive role in the alleged violation or showed mere tacit

---

[3] Deputy Price's timesheet for the week of December 5, 2010 demonstrates he did not work the night shift on December 10, 2010 or December 11, 2010. Rather, the last shift Price worked before the assault on Hacker began on December 9, 2010 and ended at 7:00 a.m. on December 10, 2010. Doc 62-3, Timesheet; Doc. 67, Price Depo., pp. 15, 87.

approval of the goings on.'" *Vaughn v. City of Lebanon,* 18 F. App'x 252, 270 (6th Cir. 2001) (quoting *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir. 1999)). "Liability under this theory must be based on more than a mere right to control employees and cannot be based upon simple negligence." *Id.* (citing *Bass*, 167 F.3d at 1048).

Hacker argues Gooch failed to review Hacker's classification status on a daily basis, which, if done, would have resulted in Hacker being moved from cell 119, thereby preventing the assault. The classification policy states that the jailer or his designee must review all classification assignments daily. Doc. 65-2, Policy, p. 2. Gooch testified that he "pretty much" reviews the roster and housing assignments every day, and that the shift commander and chief deputy are supposed to review all the inmates who have come in. Doc. 68-1, Gooch Depo. at 146. To the extent Hacker argues that *other* jail officials failed to properly classify Hacker, the Sixth Circuit has held that a supervisor cannot be held vicariously liable under § 1983 for his employees' actions. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999).

There is no other evidence with which to hold Gooch liable. Gooch was not present the night of Hacker's assault, so he was not involved in the staff's response to the assault. Doc. 68-1, Gooch Depo., p. 50. Gooch did not make the preliminary classification decision to place Hacker in cell 119, and he had no contact with Hacker during Hacker's incarceration. Further, there is no evidence that Gooch had any reason to suspect before the assault that Plummer

approval of the goings on.'" *Vaughn v. City of Lebanon,* 18 F. App'x 252, 270 (6th Cir. 2001) (quoting *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir. 1999)). "Liability under this theory must be based on more than a mere right to control employees and cannot be based upon simple negligence." *Id.* (citing *Bass*, 167 F.3d at 1048).

Hacker argues Gooch failed to review Hacker's classification status on a daily basis, which, if done, would have resulted in Hacker being moved from cell 119, thereby preventing the assault. The classification policy states that the jailer or his designee must review all classification assignments daily. Doc. 65-2, Policy, p. 2. Gooch testified that he "pretty much" reviews the roster and housing assignments every day, and that the shift commander and chief deputy are supposed to review all the inmates who have come in. Doc. 68-1, Gooch Depo. at 146. To the extent Hacker argues that *other* jail officials failed to properly classify Hacker, the Sixth Circuit has held that a supervisor cannot be held vicariously liable under § 1983 for his employees' actions. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999).

There is no other evidence with which to hold Gooch liable. Gooch was not present the night of Hacker's assault, so he was not involved in the staff's response to the assault. Doc. 68-1, Gooch Depo., p. 50. Gooch did not make the preliminary classification decision to place Hacker in cell 119, and he had no contact with Hacker during Hacker's incarceration. Further, there is no evidence that Gooch had any reason to suspect before the assault that Plummer

posed a threat to Hacker. In fact, Hacker admitted that there was no reason for Gooch to have known about the risk, because he never reported his concerns about Plummer to Gooch or submitted a grievance on the issue. Doc. 71, Hacker Depo., pp. 153, 188, 200-01. Further, none of Gooch's employees ever told him that Hacker had asked to be moved from cell 119 out of fear for his safety. Doc. 68, Gooch Depo., pp. 75, 224-28.

For these reasons, summary judgment for Gooch is appropriate.

### 5. Municipal Liability

Although "the inadequacy of police training may serve as the basis for § 1983 liability . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," there is no evidence to support this theory of liability in this case. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Gooch testified that LCRJ deputies receive at least sixteen hours of annual training approved by the Kentucky Department of Corrections. Doc. 68, Gooch Depo., p. 19; Doc. 69, Ray Depo. pp. 31-34; Doc. 67, Price Depo., p. 12. Likewise, there is no evidence that LCRJ classification policies and procedures were routinely ignored. *See Jones v. Muskegon Cnty.*, 625 F.3d 935, 947 (6th Cir. 2010) (affirming summary judgment in favor of the County where a jury could not reasonably infer from five incidents that the County had a widespread, permanent, and well-settled custom of ignoring inmate requests).

Because Hacker has failed to show that any Lincoln County employee violated his constitutional rights, his § 1983 claim against Lincoln County fails as a matter of law. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).

Accordingly, for the reasons addressed above, Defendants are entitled to summary judgment on Plaintiff's federal claims.

**C. State Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. These claims will be dismissed without prejudice.

### III. CONCLUSION

Therefore, having heard the parties and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) The joint motion for summary judgment by defendants Lincoln County Detention Center, Jailer William Gooch, Deputy Stephanie McAnich, Deputy Dennis Ray, and Deputy Rodney (Doc. 62) be, and is hereby, **GRANTED IN PART AND DENIED IN PART AS MOOT**, and all federal claims be, and are hereby, **DISMISSED WITH PREJUDICE**;

(2) The court **declines** to exercise its supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(c)(3), and those claims be, and are hereby **DISMISSED WITHOUT PREJUDICE**; and

(3) A separate judgment shall enter concurrently herewith.

This 4th day of November, 2014.



Signed By:
*William O. Bertelsman*  W.OB
United States District Judge